IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-cv-00257-BR

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of SCHNEIDER ELECTRIC BUILDING AMERICAS, INC., SPC MECHANICAL CORPORATION, and WATSON ELECTRICAL CONSTRUCTION, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CBRE HEERY, INC. f/k/a HEERY INTERNATIONAL, INC., TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, LIBERTY MUTUAL INSURANCE COMPANY, FIDELITY AND DEPOSIT COMPANY OF MARYLAND, and FEDERAL INSURANCE COMPANY, <br><br> Defendants. | ORDER |

This matter is before the court on plaintiffs' objections to U.S. Magistrate Judge Kimberly A. Swank's 9 June 2021 memorandum and recommendation ("M&R") that their motion for leave to amend their second amended complaint be denied. (DE # 125.) Defendant CBRE Heery, Inc. f/k/a Heery International, Inc. ("CBRE") filed a memorandum in opposition. (DE # 126.)

I. BACKGROUND

This action arises out of the construction of a medical clinic at Seymour Johnson Air Force Base, Goldsboro, North Carolina. In June 2020, plaintiffs, subcontractors on the project, filed this action against CBRE—the alleged Construction Manager At-Risk, architect, and

Design-Build Installation & Outfitting contractor for the project—and its sureties. In their second amended complaint, plaintiffs allege various causes of actions, including negligence, unfair and deceptive trade practices, and multiple breaches of contract. (See generally DE # 17.)

Plaintiffs seek leave to amend that complaint to add Balfour Beatty Group, Ltd. ("BBG") as a defendant to hold it jointly and severally liable with CBRE under "the theory that CBRE is the alter ego or instrumentality of BBG under North Carolina law." (M&R, DE # 104, at 4 (citations omitted).) Judge Swank concluded, because plaintiffs do not allege that "BBG held any ownership interest in CBRE or that BBG and CBRE were under the common ownership of another entity or person," plaintiffs cannot show "the domination and control necessary to pierce CBRE's corporate veil" and therefore adding BBG as a defendant would be futile. (Id. at 7.) Accordingly, she recommends that plaintiffs' motion for leave to amend be denied. (Id.)

## II. DISCUSSION

The court reviews *de novo* those portions of the M&R to which plaintiffs have objected. See 28 U.S.C. § 636(b)(1); Local Civil Rule 72.4(b)(4); Norris v. South Carolina, 18 F. App'x 171, 172 (4th Cir. 2001). Because plaintiffs seek leave to amend within the time permitted by the applicable scheduling order, Federal Rule of Civil Procedure 15(a) governs. Cf. Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008) ("[A]fter the deadlines provided by a scheduling order have passed, the good cause standard [of Rule 16(b)] must be satisfied to justify leave to amend the pleadings."). Under that rule, leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). "A motion to amend should be denied only where it would be prejudicial, there has been bad faith, or the amendment would be futile." Nourison, 535 F.3d at 298 (citation omitted).

Pertinent here, "[a] proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N.C. Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019) (citation omitted). In making such an assessment, the court applies the same standard it would in reviewing a motion to dismiss based on the failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See In re Triangle Cap. Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021) ("[I]n recent years, we have made clear that district courts are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny."). That rule "'tests the legal sufficiency of the complaint.' In evaluating a Rule 12(b)(6) motion, the court determines whether, 'accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the plaintiff,' the complaint 'states a claim to relief that is plausible on its face.'" Cohen v. Gruber, 855 F. App'x 139, 140 (4th Cir. 2021) (citations and alteration omitted).

In this case, Judge Swank concluded that plaintiffs do not allege sufficient facts in their proposed amended complaint to show that BBG could be held jointly and severally liable with CBRE under North Carolina's alter ego doctrine.

> When th[is] doctrine applies, the corporate form can be disregarded and one corporation can be held liable for the actions of the other. *See Glenn v. Wagner*, 313 N.C. 450, 453, 329 S.E.2d 326, 329-30 (1985). The alter ego doctrine has also been referred to as the "instrumentality rule," and applies where a corporation "exercises actual control over another, operating the latter as a mere instrumentality or tool." *Id.* at 454, 329 S.E.2d at 330. When this occurs, the corporate veil may be pierced, and the corporation exercising control over the instrumentality "is liable for the torts of the corporations thus controlled." *Id.*

Microspace Commc'ns Corp. v. Guest-Tek Interactive Ent., LTD, No. 5:14-CV-535-F, 2015 WL 4910134, at *2 (E.D.N.C. Aug. 17, 2015).

> To support an attack on a separate corporate entity under the instrumentality rule, a party must satisfy three elements:
> (1) Control, not mere majority, or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

Est. of Hurst ex rel. Cherry v. Moorehead I, LLC, 748 S.E.2d 568, 574 (N.C. Ct. App. 2013) (quoting Glenn, 329 S.E.2d at 330). To determine whether the first element is satisfied, various factors are considered, including inadequate capitalization, noncompliance with corporate formalities, complete domination and control of the corporation such that its independent identity does not exist, and nonfunctioning officers or directors. See Glenn, 329 S.E.2d at 330-31, 332.

> It should be remembered that the theory of liability under the instrumentality rule is an equitable doctrine. Its purpose is to place the burden of the loss upon the party who should be responsible. Focus is upon reality, not form, upon the operation of the corporation, and upon the defendant's relationship to that operation. It is not the presence or absence of any particular factor that is determinative.

Id. at 332.

At issue here is the relationship between BBG and CBRE. According to plaintiffs' proposed amended complaint, prior to October 2017, BBG was the parent company of CBRE's predecessor. Specifically, by 1990, BBG owned 100% of Heery International, Inc. ("Heery"). (Pro. 3d Am. Compl., DE # 83-1, ¶ 1269.) In 2013, Heery and the United States Army Corps of Engineers ("USACE") entered into the contract regarding the subject construction project. (Id. ¶ 19; see also Sec. Am. Compl., Ex. 1, DE # 17-2.) In October 2017, CBRE Group, Inc.

4

announced it had entered into an agreement to acquire Heery from BBG, pursuant to which BBG would indemnify CBRE for active at-risk construction management projects, including the one at issue here. (Pro. 3d Am. Compl., DE # 83-1, ¶¶ 1271, 1280.) The sale closed on or before 30 October 2017. (See id. ¶ 1275.) Heery changed its name to CBRE, (see id. ¶¶ 1284-85), and the name CBRE was substituted for the name Heery in the construction contract with USACE, (id. ¶ 1278).

First, plaintiffs object to Judge Swank's failure to consider Heery's acts which occurred prior to BBG's sale of Heery. (Pls.' Objs., DE # 125, at 8.) Plaintiffs contend that most of their causes of action occurred while BBG still owned Heery. (Id. at 6.) Even accepting that proposition as true, plaintiffs do not sufficiently allege that BBG exercised control and complete domination over Heery during that time. Plaintiffs' only proposed allegations regarding BBG's involvement with the construction project while it still owned Heery concern BBG "sourc[ing] a Site Safety and Health Officer [("SSHO")] to fill a critical role on the Project" in November 2016, (Pro. 3d Am. Compl., DE # 83-1, ¶ 1301; see also id. ¶ 1299 ("Heery has reached out to our parent company, [BBG], and through that connection, we may have identified a suitable individual [for the SSHO position]," (emphasis removed))), because Heery was undercapitalized "in terms of critical human resources," (id. ¶ 1302). These allegations alone are not sufficient to pierce CBRE's veil to reach BBG, and the court will overrule plaintiffs' first objection.

Other than BBG sourcing the one employee, BBG's alleged involvement in the construction project occurred after it sold Heery. (See generally id. ¶¶ 1320-1408.) It is undisputed that following its sale of Heery, BBG has not had any ownership interest in Heery's successor, CBRE. Recognizing this, plaintiffs lodge their second objection to the M&R. Plaintiffs argue that Judge Swank erred in concluding that an ownership interest (or legal right to

5

control) is necessary for corporations, such as BBG and CBRE, to be affiliates under the instrumentality rule. (Pls.' Objs., DE # 125, at 8, 11.)

Liability under North Carolina's instrumentality rule may occur not only with parent-subsidiary corporations but also with affiliated corporations. See Glenn, 329 S.E.2d at 333 ("[O]ur rule with regard to piercing the corporate veil is broad enough to encompass both those situations where there is direct stock ownership of a subsidiary corporation by a parent corporation, and stock control as exercised through a mutual shareholder as evidenced in the present case.") In applying the rule to affiliated corporations, the North Carolina Supreme Court recognized that such corporations are those "in which the controlling interest in both is owned by the same person or persons." Id. at 331.

Plaintiffs do not contend that BBG and CBRE are affiliates under this definition. Rather, they urge the court to apply "a larger body of law governing the interaction between corporations [that] focuses on the extent of direct or indirect control, without regard to ownership, when determining whether two corporation are affiliates." (Pls.' Objs., DE # 125, at 11.)

Plaintiffs first rely on a definition of "affiliate" contained within a section of North Carolina's Corporation Income Tax Act, N.C. Gen. Stat. § 105-130.6.[1] (Id. at 8.) That statute addressed the determination of a corporation's net income based on transactions between it and its subsidiaries and affiliates and authorized the North Carolina Secretary of Revenue to require such a corporation to file a consolidated tax return. See N.C. Gen. Stat.§ 105-130.6 (repealed 2011). As CBRE points out, the North Carolina Legislature repealed the statute effective for tax

---

[1] That definition is:
> A corporation is considered an affiliate of another corporation when both are directly or indirectly controlled by the same parent corporation or by the same or associated financial interests by stock ownership, interlocking directors, or by any other means whatsoever, whether the control is direct or through one or more subsidiary, affiliated, or controlled corporations.

N.C. Gen. Stat. § 105-130.6 (repealed 2011).

6

Case 5:20-cv-00257-BR   Document 214   Filed 12/02/21   Page 6 of 9

years beginning on or after 1 January 2012, see 2011 N.C. Sess. Laws 390, 411, and therefore, the definition contained therein is irrelevant.[2]

Next, plaintiffs rely on the definition of "affiliate" promulgated under the Securities Exchange Act of 1934's regulations: "'a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, the person specified.'"[3,4] (Pls.' Objs., DE # 125, at 10 (quoting 17 C.F.R. § 230.405) (emphases removed).) Also, plaintiffs rely on a nearly identical definition of "affiliate" within North Carolina's Business Corporation Act. (See id. at 11 ("'A person that directly, or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with another person' . . . ." (quoting N.C. Gen. Stat. § 55-13-01)).)

On their face, these definitions are broad, and they apply to circumstances not at issue here—federal securities law violations and state shareholder appraisal rights. The court will not use a definition different from what the North Carolina Supreme Court recognized in characterizing the relationship between two corporations to determine the domination sufficient to hold one corporation liable under the instrumentality rule, cf. Brendle v. Gen. Tire & Rubber Co., 505 F.2d 243, 245 (4th Cir. 1974) ("A federal court, sitting in North Carolina in a diversity

---

[2] Section 105-130.5A was enacted to replace Section 105-130.6. See 2011 N.C. Sess. Laws 390. The new provision clarifies the Secretary of Revenue's authority based on transactions between a corporation and its "affiliated group." See N.C. Gen. Stat. § 105-130.5A. Such group is defined, in relevant part, as
> a group of two or more corporations . . . in which more than fifty percent (50%) of the voting stock of each member corporation . . . is directly or indirectly owned or controlled by a common owner or owners, either corporate or noncorporate, or by one or more of the member corporations . . . .

Id. § 105-130.5A(i). Because this definition requires the common ownership or control of each member corporation's stock majority and plaintiffs make no such allegation, BBG and CBRE are not affiliates even under this definition.

[3] Although plaintiffs refer to the "Security Exchange Act," (Pls.' Objs., DE # 125, at 10), the court presumes they mean the Securities Exchange Act of 1934. However, they quote the definition of "affiliate" in the regulation applicable to the Securities Act of 1933, 17 C.F.R. § 230.405. Nonetheless, the definitions of "affiliate" in the two acts are identical. Compare 17 C.F.R. § 230.405, with id. § 240.12b-2.

[4] "The term 'control' (including the terms 'controlling,' 'controlled by' and 'under common control with') means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b-2.

7

case, must apply the law as announced by the highest court of that state or, if the law is unclear, as it appears the highest court of that state would rule." (citations omitted)), particularly where that court has instructed "a corporation's separate and independent existence is not to be disregarded lightly," State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 666 S.E.2d 107, 112 (N.C. 2008) (cleaned up, citation omitted). Using the North Carolina Supreme Court's definition, BBG and CBRE are not affiliates because plaintiffs do not allege that the same person (including the same entity(ies)) owns the controlling interest in each of those corporations. Accordingly, plaintiffs' second objection will be overruled.

Finally, plaintiffs object to Judge Swank's ultimate conclusion that "'[p]laintiffs' proposed amendment, taken as true, fails to include facts sufficient to demonstrate the domination and control necessary to pierce CBRE's corporate veil.'" (Pls.' Objs., DE # 125, at 11 (quoting M&R, DE # 104, at 7) (emphasis removed).) Plaintiffs claim BBG controlled CBRE on the construction project and cite to newly discovered evidence which purportedly shows BBG's domination of CBRE. (See id. at 13-18.) Based on that evidence, they contend, BBG controlled funding of the project; BBG's employees supervised work at the construction site and controlled access to it; BBG dictated certain policies regarding the project; BBG controlled the negotiation of subcontractors' claims arising out of the project; and CBRE's President ceded control to BBG. (See id.) Even accepting such inferences could be drawn from the evidence, as discussed above, plaintiffs have not alleged that BBG had any ownership interest in CBRE nor do their allegations show that the two corporations are affiliates. Accordingly, plaintiffs have not made a sufficient showing as to the first element of North Carolina's instrumentality rule, cf. Krausz Indus. Ltd. v. Smith-Blair, Inc., 188 F. Supp. 3d 545, 557 (E.D.N.C. 2016) (holding personal jurisdiction over foreign corporation under North Carolina's alter ego theory was

8

lacking where evidence showed that the allegedly dominant corporation did not have any ownership interest in the subject manufacturing facility or in the foreign corporation), and the court will overrule plaintiffs' third objection.

III. CONCLUSION

Plaintiffs' objections to the M&R are OVERRULED, and their motion for leave to amend their second amended complaint, (DE # 83), is DENIED.

This 2 December 2021.

_____

W. Earl Britt
Senior U.S. District Judge